IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.                                                     CIV 06-0940 WJ/KBM
                                                     CR 02-0501 WJ

DAVID DURAN-SALAZAR,

    Defendant-Movant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON FINAL ISSUE AFTER EVIDENTIARY HEARING

       Following remand from the Tenth Circuit, I held an evidentiary hearing on the sole remaining issue in this § 2255 habeas matter – whether trial counsel denied Defendant David Duran-Salazar the right to testify.  As before, I refer to Mr. Duran-Salazar as "Petitioner."[1] Unless otherwise noted, all citations to "Doc." are the documents filed in this civil action and the page numbers refer to the CM/ECF pagination assigned to the document.  Also, I am not using written transcript of the hearing but rather the audio recording, and will cite to it as "FTR" and note time range for that area of the recording.  I find no need for further briefing and recommend that the petition be dismissed.

---

[1] *See, e.g., United States v. Gaines,* 300 Fed. App'x 605 (10th Cir. 2008) ("seeks a certificate of appealability . . . to challenge the district court's denial of his 28 U.S.C. § 2255 petition"), *cert. denied,* 120 S. Ct. 335 (2009); *United States v. Hardridge,* 239 Fed. App'x 412 (10th Cir. 2007) ("his 28 U.S.C. § 2255 petition to vacate, modify, or set aside his sentence"), *cert. denied,* 128 S. Ct. 1263 (2008); *United States v. Jose Garcia-Cardenas,* CIV 08-0382 LH/KBM (Doc. 7 at 2) ("Defendant raises three claims in his § 2255 petition").

It is well-settled that a defendant has a constitutional right to take the witness stand in his or her own defense, *e.g., Rock v. Arkansas,* 483 U.S. 44, 51-53 (1987), the decision lies with the defendant, and not counsel, *e.g., Jones v. Barnes,* 463 U.S. 745, 751 (1983), and counsel has no authority "to prevent a defendant from testifying in his own defense, even when doing so is suicidal strategy," *Cannon v. Mullin,* 383 F.3d 1152, 1171 (10th Cir. 2004) (citing *United States v. Janoe,* 720 F.2d 1156, 1161 (10th Cir. 1983), *cert. denied,* 465 U.S. 1036 (1984)), *cert. denied,* 544 U.S. 928 (2005). Under the familiar two-part test of *Strickland,* a habeas petitioner has the burden of showing both that: (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland v. Washington,* 466 U.S. 668, 687-88, 694 (1984).

The right to testify and *Strickland* intersect where trial counsel interferes in some way with a defendant's decision to testify. If counsel actually interferes with the right, for example, by prohibiting a defendant from testifying despite his or her wishes to the contrary, the first prong of *Strickland* is satisfied. *See, e.g., Cannon,* 383 F.3d at 1171 (" Such a dereliction of duty by counsel would satisfy the first prong of *Strickland.*"); *United States v. Duran-Salazar,* 307 Fed. App'x 209, 211 (10th Cir. 2009) ("'[i]f [Duran-Salazar's] counsel deprived him of the constitutional right to testify in his own defense[,] [s]uch a dereliction of duty by counsel would satisfy the first prong of *Strickland.*") (quoting *Cannon*).

There is also a "consultation" aspect to counsel's responsibilities with respect to the right to testify:

Defense counsel should inform the defendant that he has the right to testify and

2

> that the decision whether to testify belongs solely to him. *See* [*United States v. Teague,* 953 F.2d 1525 (11th Cir.) (*en banc*), *cert. denied,* 506 U.S. 842 (1992)] at 1533-34.  Counsel should also discuss with the defendant the strategic implications of choosing whether to testify, and should make a recommendation to the defendant.  *See id.*

*Cannon,* 383 F.3d at 1171.   Thus, "if defense counsel never informed the defendant of the right to testify, and that the ultimate decision belongs to the defendant, counsel would have neglected the vital professional responsibility of ensuring that the defendant's right to testify is protected and that any waiver of that right is knowing and voluntary." *Teague,* 953 F.2d at 1534.

Conversely, however, if counsel advises a client that "that it would be unwise and unnecessary for him to testify [and] rested the defense . . . believ[ing] that [defendant] had assented or acceded to her recommendation . . . . counsel's performance [i]s not constitutionally deficient." *Teague,* 953 F.2d at 1535.² Cases from the Tenth Circuit and this district recognize the same principle.  For example, if a defendant is "influenced by her counsel's advice suggesting that she not testify . . . any such influence does not amount to ineffective assistance of counsel."³

---

² *Teague* is often cited by the Tenth Circuit. *See, e.g., Cannon,* 383 F.3d at 1172; *Janoe,* 720 F.2d at 1161, n. 10; *Wesley v. Snedeker,* 284 Fed. App'x. 521, 526 (10th Cir. 2008), *cert. denied sub nom Wesley v. Janecka,* 129 S. C. 939 (2009); *United States v. Bailey,* 245 Fed. App'x 768, 771 (10th Cir. 2007), *cert. denied,* 128 S. Ct. 1286 (2008); *Aragon v. Tafoya,* 42 Fed. App'x 255, 254 (10th Cir.), *cert. denied,* 537 U.S. 1051 (2002); *United States v. Beers,* 110 Fed. App'x 53, 54 (10th Cir. 2004).

³ *Underwood v. Massie,* 75 Fed. App'x 747, 749 (10th Cir. 2003) (citing as analogous support *Hooks v. Ward,* 184 F.3d 1206, 1219 (10th Cir. 1999) (counsel testified at evidentiary hearing that he did not call his client to testify at the penalty phase because counsel "didn't think he would make good witness," and did not "remember ordering him not to testify or telling him that he would not be allowed to testify [or] him insisting on testifying" held not ineffective); *see also, e.g., United States v. Vazquez-Pulido,* 45 Fed. App'x 833 (10th Cir. 2002) (affirming this Court where, "[b]ased on the testimony she heard at the evidentiary hearing and her assessment of the witnesses' credibility, the magistrate judge found that defendant was aware of his right to testify, that trial counsel always advised his clients that they had the right to testify and did not deviate

The "acceptance of counsel's recommendation" principle is related to the issue of waiver. It is equally well-settled that a defendant can waive the right to testify, so long as the waiver is "knowingly and voluntary." *E.g., Florida v. Nixon,* 543 U.S. 175, 187 (2004) ( "A defendant . . . has the ultimate authority to determine whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal."); *United States v. Olano,* 507 U.S. 725, 733 (1993) ("[W]aiver is the intentional relinquishment or abandonment of a known right."); *Backus v. Hartley,* 2009 WL 3138867 at * 3 (10th Cir. 2009) ("A waiver of the right to testify in one's own defense must be voluntary, knowing, and intelligent) (citing *Harvey v. Shillinger,* 76 F.3d 1528, 1536 (10th Cir.), *cert. denied,* 519 U.S. 901 (1996)), *petition for cert. filed 11/2/09.* As the Tenth Circuit summarized in an earlier unpublished decision:

> In drawing the "difficult line . . . between earnest counseling and [the] overt coercion" which amounts to ineffective assistance, courts consider:
>
>> (1) whether the defendant knew about his constitutional right to testify, and if not, whether he was informed by counsel; (2) the competence and soundness of defense counsel's tactical advice, i.e., whether counsel presents the defendant with sufficient information to permit a meaningful voluntary waiver of the right to testify; and (3) any intimidation or threatened retaliation by counsel relating to the defendant's testimonial decision.
>
> *Lema v. United States,* 987 F.2d 48, 52-53 (1st Cir. 1993) (citations omitted).

*Wimberly v. McKune,* 1998 WL 115953, ** 3-4  (10th Cir. 1998) (footnote omitted).  More

---

from this practice with defendant, that counsel recommended that defendant not take the stand but did not order defendant not to testify, that defendant trusted his counsel and took his advice, and that defendant did not insist that he be called to testify after he heard his brother's testimony."); *Patscheck v. Snodgrass,* CIV 05-190 (Doc. 22 at 12: "Petitioner may have been influenced by her counsel's advice suggesting that she not testify, but any such influence does not amount to ineffective assistance of counsel.") (citing *Hooks*).

4

recently, it has indicated that waiver can be inferred by a defendant's inaction:

> The right to testify on one's own behalf at a criminal trial is essential to due process of law. . . . "The decision whether to testify lies squarely with the defendant; it is not counsel's decision.". . .  A trial court has no duty to explain to the defendant, however, that he has a right to testify or to verify that a defendant who is not testifying has waived the right.  *See United States v. Ortiz,* 82 F.3d 1066, 1069-70 & 1069 n. 8 (D.C. Cir. 1996) (collecting cases); *cf. United States v. Janoe,* 720 F.2d 1156, 1161 (10th Cir. 1983).  To ensure his constitutional rights, "a defendant must alert the trial court that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand." *United States v. Webber,* 208 F.3d 545, 550 (6th Cir. 2000) (quotation omitted); *Janoe,* 720 F.2d at 1161 n. 9 (holding that right to testify not denied where, inter alia, "defendant made no objection to his attorney's statements that defendant would not testify and made no request to testify").  "When a defendant does not alert the trial court of a disagreement [with his counsel regarding his right to testify], waiver of the right to testify may be inferred from the defendant's conduct."  *Webber,* 208 F.3d at 550.

*United States v. Williams,* 139 Fed. App'x. 974, 976 (10th Cir. 2005) (citations to *Rock* and *Cannon* omitted).[4]  If this inference was not permissible, it would impose a duty of constitutional dimension on the Court and counsel that has never been recognized by the Supreme Court.  At the very least, when a defendant's first and only suggestion he wanted to testify and was prevented from doing is brought years later in habeas proceedings, it reflects adversely on his credibility.[5]

---

[4] *See also Underwood,* 75 Fed. App'x a 749 ("The transcript indicates that her trial counsel announced in open court at the close of the state's case that he would not be calling petitioner to testify.  The record does not reflect any objection by petitioner to this assertion at the close of the state's case, nor does it indicate she raised any objection at the close of the defense case or at any other time.  *See . . . Janoe . . .* (holding that right to testify not denied where "defendant made no objection to his attorney's statements that defendant would not testify and made no request to testify")).

[5] *E.g., Hodge v. Haeberlin,* 579 F.3d 627, 639-40 (6th Cir. 2009) (" Notably, Hodge has not stated that he was unaware of his right to testify or that he was somehow prevented from seeking the court's assistance in overcoming counsel's allegedly unilateral decision. . . . when a

5

As habeas counsel clarified at the evidentiary hearing, Duran-Salazar's claim touches on the "actual interference," "consultation," and waiver areas. *See FTR* at 1:30 - 1:32 p.m. ("Mr. Duran-Salazar was aware that he could testify, he had asked Mr. Ortiz if he could testify . . . wished to testify, expressed his wish to testify, the plan was for him to testify and . . . the decision not to testify was made by Mr. Ortiz without fully consulting Mr. Duran; that he did not fully understand that there was going to be a waiver until after the case was complete and was surprised that he had not been permitted to take the stand").

---

tactical decision is made not to have the defendant testify, the defendant's assent is presumed. . . .  Indeed, "[b]arring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record.") (internal quotations and citations omitted); *Arredondo v. Huibregtse,* 542 F.3d 1155, 1165-66 (7th Cir. 2008) ("As the district court pointed out, the Supreme Court of the United States never has held that a trial court must engage in a personal colloquy with a defendant to determine whether he wishes to testify or that a waiver of the right to testify must occur formally on the record. Indeed, in . . . *Brimberry* . . . we held that courts have no affirmative duty to determine whether a defendant's silence is the result of a knowing and voluntary decision not to testify.") (internal quotations and citations omitted), *cert. denied,* 129 S Ct. 968 (2009); *United States v. Hayes,* 56 Fed. App'x 294, 295 (8th Cir. 2003) ("The District Court did not err.  A defendant who does not alert the trial court that he wishes to testify when his attorney rests without calling him to the stand has waived his right to testify.  . . . *Bernloehr* . . . In the present case, Hayes did nothing at trial to signal the District Court that he disagreed with his trial counsel's decision to rest without Hayes's testimony.  Under *Bernloehr,* Hayes is barred from claiming he was denied his right to testify.) (internal citations omitted); *United States v. Leggett,* 162 F.3d 237, 248 (3rd Cir. 1998) ("The bare facts of the matter are these:  (1) the day before the defense rested its case, Leggett and his attorney disagreed about Leggett's taking the stand; (2) one day later, at the close of evidence, Leggett's attorney indicated that he had no further evidence to present-which implicitly meant that Leggett would not testify; and (3) Leggett did not then and does not now maintain that his attorney acted against his wishes. Based on these facts, the district court received no indication that Leggett was coerced by his attorney to remain silent.  The district court could only have assumed that, in the 24-hour period leading to the close of evidence, Gardner had convinced Leggett that testifying was not in his best interests."), *cert. denied,* 528 U.S. 868 (1999).

6

Having heard the testimony of the witnesses and observing their demeanor during the hearing, I find Petitioner's assertions patently incredible, particularly in light of his relative sophistication and intelligence compared to vast majority defendants the Court encounters in large numbers practically every day. First, Petitioner has some college education, but was loathe to reveal that fact until he was impeached with statements he made to the probation office. Second, he testified that he crossed the Rio Grande without any guide advising him where to do so. Third, he recited without prompting each piece of clothing he had worn on the day he crossed into the United States (and even the colors of some them).

Nevertheless, Petitioner asked the Court to believe that he had met with Mr. Ortiz only three times before the trial began with each visit lasting no more than fifteen minutes and that no phone conversations took place. Petitioner also contends that he <u>never</u> told Mr. Ortiz <u>any</u> details about the circumstances surrounding his illegal entry that might exculpate him - that he was alone entering into the United States only to work as a carpenter and that he knew none of his co-defendants. *See FTR* at 1:46 p.m., 2:06 p.m. Yet he maintains, and Mr. Ortiz confirmed, that up until the Government rested its case, Petitioner intended to testify. That an attorney would even consider putting his client on the stand without any knowledge of the contents of his testimony reeks of dubious credibility.

Having reviewed the relevant portions of the trial transcript, I also find incredible Petitioner's testimony that he could not remember the trial judge asking the defense attorneys if they had anything to present after the government rested its case. *See FTR* at 1:50 p.m. - 2:03 p.m. At the close of the government's case-in-chief, Mr. Ortiz indicated that his defense case would take about an hour "*if*" Duran-Salazar testified. CR 02-0501 BB, Doc. 194-3, *Transcript* at

7

362. After the Court took a break, it specifically asked counsel if there would be, "Any evidence for David Duran-Salazar?" Mr. Ortiz responded by resting his case without submitting any evidence or testimony. *Id.* at 363-64. Counsel for Co-defendant Alvarez-Perez did the same. *Id.*

If the remaining co-defendant had also rested without presenting any evidence, perhaps Petitioner's contention that he didn't understand what was happening might have an smidgen of credibility. But instead, counsel for Co-defendant Rascon-Garcia put on a defense by calling investigator Tim Cling to testify. *Id.* at 364-379. Surely during Mr. Cling's testimony, Petitioner had time to realize he had not been called to testify and had the opportunity to bring any opposition to that decision to the attention of both Mr. Ortiz and the court. He did neither.

Thus, I believe Mr. Ortiz' testimony, which is consistent with the representations he made in his motion to withdraw from the criminal proceeding[6] filed within weeks of the jury's verdict. As in that motion, Mr. Ortiz testified at the hearing that he and Petitioner talked about whether he would testify at the end of the government's case, Mr. Ortiz advised against it and it was Petitioner who decided not to do so. It was sound advice, given the circumstances. Mr. Ortiz testified at that although Petitioner had no criminal history, he could not corroborate

---

[6] *See, e.g., Doc. 11* at 31; *Supplemental Appellate Brief,* 2000 WL 2442061 at * 4 (After the conclusion of the jury trial, Defendant's appointed counsel, Herman Ortiz, filed a motion to withdraw as counsel. *Doc. 55.* In that motion, defense counsel stated that he had prepared Defendant for trial and for his testimony, but that Defendant 'ultimately decided at trial at the close fo the government's case that he would not testify.' *Id.* Defendant's § 2255 motion disputes this, instead claiming that he desired to testify but that his attorney either failed to present his testimony or prevented it.")

Petitioner's increasingly vague assertions about why he crossed the border.[7] The government's key evidence was the testimony of a border patrol officer who stated he was able to observe a group of people with backpacks on a "FLIR" monitor, and that he was able to see them constantly from the time they crossed from Mexico until the time they were arrested. However, the actual tape did not exist, and the one introduced for demonstrative purposes gave the defense openings to discredit the agent's testimony. Indeed, that was the concerted strategy all defense counsel pursued throughout the "whole trial." As Mr. Ortiz told his client, if that strategy "went fairly well . . . as long as we get one person on the jury to hang . . . we might be able to come out of this because it's a risky proposition to testify." Therefore, the final decision not to testify was not made until after the government rested its case.

      The record reflects that the judge took a recess after the government rested. At that time, Mr. Ortiz consulted first with the attorneys representing the two co-defendants who, like he, felt confident they had many points to make in closing arguments to discredit the border patrol agent. Informed that the co-defendants would not be taking the stand, Mr. Ortiz then advised Petitioner that "I felt that we had made the best case we could impeaching the agent and that, if he testified, he'd probably suffer a pretty brutal cross-examination if his explanation as to why he came here couldn't be corroborated [and if he was] successfully impeached . . . it would dash any hope of trying to get an acquittal or a hung jury." *FTR* at 2:10 - 2:20 p.m. After this

---

[7] There is a discrepancy in the record whether Petitioner asserted that he crossed to see a girlfriend or whether he crossed to find work, but there is no dispute that Mr. Ortiz testified that his concern for the risk that Petitioner would incur in testifying, was that there was no corroboration for Petitioner's story and, in Mr. Ortiz's experience, people who cross the border for work or other reasons have some sort of destination and some contact with someone in the United States. *See FTR* at 2:10 - 2:48 p.m.

9

conversation, Petitioner, as most clients, "wanted [Mr. Ortiz] to decide for him," but Mr. Ortiz told him that was not permitted and explained the consequences of a hung jury versus an acquittal. It was a "tough decision," but Petitioner indicated to Mr. Ortiz that he would not be testifying: "no, . . . I think it's better, just let it be." *FTR* at 2:38 - 2:48 p.m.

Mr. Ortiz' testimony establishes that he carried out his consultative responsibilities and that his client chose not to testify. Thus, Petitioner has not met his burden of showing counsel's conduct was deficient. That is sufficient to end the inquiry and deny habeas relief.

Yet even if Petitioner had been able to establish the first prong of the *Strickland* analysis, he still would be required to show prejudice.[8] A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. I find that there is no reasonable possibility Petitioner's testimony would have altered the result in this case.

I recognize that two members of the panel on appeal were not entirely convinced by my reasoning that the essential substance of what Petitioner wanted to testify about – he crossed in a

---

[8] Alleged attorney interference with the right to testify is not, as habeas counsel suggested on appeal and perhaps initially alluded to here, a "*per se*" violation warranting relief. *Compare, e.g., Supplemental Appellate Brief,* 2000 WL 2442061 at * 4 ("it cannot be conclusively demonstrated that counsel's failure to put on Defendant's testimony was not ineffective assistance of counsel *per se*"), *and Doc. 30* at 3 and *FTR* at 2:49 - 2:51 p.m. (Petitioner's burden is two-fold, to establish that there was no knowing waiver and that his testimony could have effected the jury verdict); *with Duran-Salazar,* 307 Fed. App'x at 211 ("'*Strickland*'s second prong-prejudice-is established if there is a reasonable probability that defendant's testimony would have raised in a juror's mind a reasonable doubt concerning his guilt.' . . . 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'") (internal quotation omitted), *and Battle v. Sirmons,* 304 Fed. App'x 688, 693 (10th Cir. 2008) ("If Battle were prevented from testifying in his own defense by counsel, he would satisfy the *Strickland* deficient performance prong. But he must also show prejudice to satisfy *Strickland*."), *and United States v. Beers,* 110 Fed. App'x 53, 55 (10th Cir. 2004) ("Even if counsel overrode his desire to testify, however, Mr. Beers must show prejudice, which is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'").

different spot and came across the others with the backpacks but had nothing to do with them – was before the jury. Those members wanted to hear information about terrain, the common practice of illegal immigrants when they cross the border, and the relationship between the co-defendants. None of that information was tendered.[9]

But the jurors were instructed about the presumption of innocence, reasonable doubt, that they could not make any adverse inferences by a defendant's failure to take the stand, and that mere presence and mere knowledge that someone else is committing a crime is not sufficient to convict. They had to decide if this was this a case of mere presence and mere knowledge that

---

[9] The dissent argues that no evidentiary hearing was needed because Mr. Duran-Salazar's story is "wholly incredible" in light of the government's evidence. We note first that this was not the basis on which the district court denied the motion. The district court found that Mr. Duran-Salazar's testimony would not have made a difference because the "substance" of that testimony was "plainly before the jury" through counsel's cross-examination of witnesses and the presentation of one witness. We believe this conclusion understates the potential impact on a jury, especially in a close case, of a defendant taking the stand in his own defense and giving his account of the events under oath, subject to cross-examination. That is why our precedents state a preference for an evidentiary hearing in such circumstances. *See Owens,* 483 F.3d at 60. We are hesitant to affirm on a fact-intensive alternative ground, on which the district court did not rely. The "wholly incredible" standard is a high hurdle for an appellate court to leap on the basis of a cold record. Without knowing more about the terrain in which the events of this case took place, the practices of illegals in crossing the border, or the relationships among the co-defendants, we lack the confidence to label as "wholly incredible" the notion that a group of illegals might band together for the purpose of crossing the border together, and might scatter upon confrontation with a border patrol, without necessarily being in cahoots for other purposes.

*Duran-Salazar,* 307 Fed. App'x. at 211-12.

11

someone else was committing a crime, or whether each defendant was indeed associated with the backpackers.  The weaknesses of the government's case (many people cross the border in that area at that time of year, there was no actual recording of the backpackers who were under surveillance, even if a tape had been available, the technology could not show facial or other distinguishing features, such a humans versus animals, and the government did not do anything to preserve evidence that could have linked the defendants to the group, such as footprints, fingerprints, strap marks) handed defense counsel a way to argue reasonable doubt without exposing their clients to cross-examination.  The jurors' difficulty in reaching a verdict demonstrates that these deficiencies made it difficult for them to find guilt.  Had Petitioner testified at trial, I believe effective cross-examination would have made it much easier for the jury to eliminate any doubts about guilt.

     Although Mr. Ortiz testified that he believed his client's version of events and thought he could make a credible witness especially because he had no prior convictions, I disagree.[10]  Having now seen and heard Petitioner testify, I find him to be a wholly incredible witness, even without the rigorous cross-examination he would have faced at trial and that reasonable jurors would have perceived his testimony as I have.  As such, the more likely result would have been,

---

[10] For instance, Petitioner testified that his attorney never presented to him any proposed plea agreement offered  before trial. *See FTR* at 2:03 p.m.  To the contrary, Mr. Ortiz testified that he did indeed review with Petitioner a proposed plea agreement which two of the five co-defendants accepted.  And Duran-Salazar acknowledged that his attorney told him that he could help his case if he provided information about the route the drugs had traveled, but that he "never came to any agreement" because he insisted that he had no information to give since he was not involved.  *FTR* at 1:53 - 54 p.m.  This is consistent with Mr. Ortiz' sworn testimony that he presented the proposed plea agreement but could not obtain from Petitioner a factual basis to support acceptance of a guilty plea.

as Mr. Ortiz predicted, that the impact of Petitioner's testimony would have been to jeopardize any hope of acquittal or a hung jury. Thus, I also find that Petitioner fails to meet the second prong of *Strickland.*

Wherefore,

IT IS HEREBY RECOMMENDED that habeas relief be denied and this action dismissed.

> THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

_____
UNITED STATES MAGISTRATE JUDGE